# BALTIMORE AND OHIO RAILROAD COMPANY *v.* ELEANOR RAY MAUGHLIN.

*Constitutional Law — Impairing Obligation of Contract — Change of Remedy—Condemnation Proceeding.*

That, by the Acts of 1912 and 1914, a method of condemning land is provided other than that specified in the charter of the Baltimore and Ohio Railroad Company, granted by the Legislature in 1826, does not impair the obligation of a contract, such acts merely changing the remedy given to enforce the right of condemnation, and the remedy thereby provided being substantially equivalent in coercive force to that specified in the charter.

pp. 374-378

The Legislature has the right to change the remedy for the enforcement of an existing contractual obligation, even to the extent of abolishing entirely the remedy in force at the time the contract was entered into, provided the method substituted therefor be substantially equivalent in coercive force to that provided by law when the obligation was contracted.

pp. 376-378

The Metropolitan Branch of the Baltimore and Ohio Railroad, having been built under the authority of Acts 1865, ch. 70, in which act there was expressly reserved by the Legislature the right to alter, amend, or repeal, the Legislature had the right to amend the method of condemnation provided for in that act by substituting the method prescribed in article 33A of the Code.

pp. 378, 379

*Decided June 10th, 1927.*

Appeal from the Circuit Court for Montgomery County, In Equity (PETER, J.).

Bill by Eleanor Ray Maughlin against the Baltimore and Ohio Railroad Company and Joseph B. Pyles, Sheriff. From an order overruling demurrers to the bill, defendant railroad company appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and SLOAN, JJ.

*O. H. W. Talbott,* with whom were *Talbott & Prettyman* on the brief, for the appellant.

*Thomas M. Anderson* and *Albert M. Bouic,* for the appellee.

DIGGES, J., delivered the opinion of the Court.

On March 19th, 1927, the plaintiff (appellee here), filed in the Circuit Court for Montgomery County the following bill of complaint:

"1. That she is the owner of a tract of land, situate, lying and being in the County of Montgomery and State of Maryland, more particularly described in 'Exhibit A' filed herewith as part hereof and hereinafter referred to.

"2. That the Baltimore and Ohio Railroad Company has instituted proceedings to condemn said land for its use and occupation, claiming the right to do so under the provisions of its charter granted by the Maryland Legislature in 1826, Chapter 123, together with the supplements and amendments thereto, and the defendant, Joseph B. Pyles, Sheriff of Montgomery County, will, on the 24th day of March, 1927, summon a jury for the purpose of assessing the damages for the taking of said land, all of which will more fully and at large appear by reference to the application of the defendant company and the plat thereto attached, the warrant of the Justice of the Peace, and the notice served upon your oratrix by the said Sheriff, copies of which are filed herewith as part hereof marked 'Exhibit A.'

"3. That the said defendant company has constructed its said railroad through said Montgomery County and is operating said road under and by virtue of the authority granted to it by the Maryland Legislature at its session in 1865, Chapter 70, and is

known as the Metropolitan Branch of the Baltimore and Ohio Railroad Company.

"4. That your oratrix is advised that the said defendant company has no legal right to proceed to condemn her land under the provisions of its charter and the amendments thereto aforesaid, but is required to comply with the provisions of Article 33A of the Code of Public General Laws of Maryland, none of which has been done in this case, and that your oratrix is desirous that the condemnation proceedings shall be conducted under the provisions of Article 33A of the Code aforesaid, but is remediless in the premises without the aid and intervention of this Honorable Court.

"5. That the defendant, the Baltimore and Ohio Railroad Company, is a corporation duly incorporated under the laws of the State of Maryland, and the defendant, Joseph B. Pyles, Sheriff of Montgomery County, is a resident of said county and state.

"To the end, therefore,

"1. That the defendant, the Baltimore and Ohio Railroad Company, its agents, attorneys and employees, and the defendant, Joseph B. Pyles, Sheriff of Montgomery County, may be enjoined from further proceedings with the condemnation of your oratrix' land until the defendant shall have complied with the provisions of Article 33A, of the Code of Public General Laws of the State of Maryland.

"2. And for such other and further relief as the nature of her case may require.

"May it please your Honors to grant unto your oratrix the state's writ of subpoena directed to the said Baltimore and Ohio Railroad Company, a corporation duly incorporated under the laws of the State of Maryland, and to the defendant, Joseph B. Pyles, Sheriff of Montgomery County, and residing therein, commanding them to be and appear in this Court on some certain day to be named therein, in person or by solicitor, and answer the premises and abide by and perform such decree as may be passed therein."

Accompanying the bill of complaint, as a part thereof, was filed this exhibit:

"Exhibit A.

"Notice.

"Copy.

"Application.

"To: John Jones, Esquire, Justice of the Peace of the State of Maryland, in and for the County of Montgomery:

"Sir: Whereas, The Baltimore and Ohio Railroad Company cannot agree with Eleanor Ray Maughlin for the purchase or use and occupation of the land owned by said Eleanor Ray Maughlin wanted for the construction of its railroad, roadbed and tracks necessary for the same, which land is described as follows, that is to say: Beginning at a point on the present southerly right of way line of The Baltimore and Ohio Railroad Company, said point being the intersection of the said southerly right of way line with the line dividing the lands of Eleanor Ray Maughlin from the lands now or formerly of Mamie Ray Custer, said point being distant 45.51 feet measured south 27° 23′ West from station 1485 plus 17.3 on the proposed center line between two main tracks of The Baltimore and Ohio Railroad Company, said point also being distant 38.17 measured south 27° 23′ West from station 1494 plus 65.21 on the center line of the present main track of The Baltimore and Ohio Railroad Company; thence South 27° 23′ West 25.00 feet along said dividing line; thence North 75° 34′ 14″ West 90.09 feet to the original land line which formerly divided the lands of Aloysius Reid from the lands of Samuel P. Nicholls; thence North 50° 49′ East 30.22 feet along said original land line to a point on the said present southerly right of way line, said point being distant 49.28 feet measured south 50° 49′ west from station 1485 plus 76.22 on said proposed center line between two main tracks of The Baltimore and Ohio Railroad Company, said point also being distant 40.00 feet measured south 50° 49′ west from station

1495 plus 28.00 on the center line of the present main track; thence south 75° 36′ 14″ East 77.77 feet along said present southerly right of way line to the point of beginning, said parcel containing 0.047 acres of land, more or less; and is more particularly shown on the plat hereto annexed, and made a part of this application; being part of the land situated in Montgomery County, Maryland, devised to said Eleanor Ray Maughlin by the Last Will and Testament of Sarah E. Boyd, made on the fifth day of April, A. D. 1925, and recorded among the Records of The Register of Wills of Montgomery County in Liber P. E. W. No. 2, folio 461; therefore application is hereby made to you to issue your warrant, under your hand and seal, directed to the Sheriff of the said Montgomery County, directing him to summon a jury of twelve inhabitants of said Montgomery County, not related nor in anywise interested, to meet on said land on a day to be named in your warrant, not less than ten and not more than twenty days after issuing the same, to value the damages which the said owners of said land first above described will sustain by the use and occupation aforesaid, according to the provisions of the Act of the General Assembly of Maryland, incorporating the said The Baltimore and Ohio Railroad Company, being the Act of 1826, Chapter 123, together with the supplements and amendments thereto.

"Talbott & Prettyman,

"Attorneys for The Baltimore and Ohio Railroad Company."


"Warrant.

"To Joseph B. Pyles, Sheriff of Montgomery County:

"Sir: In pursuance of the foregoing application and the provisions of the Acts of Assembly therein referred to, you are hereby required to summon a jury of twenty inhabitants of the said County of Montgomery above the age of twenty-one years, and qualified to act as jurors under the laws of this state, not related

nor in any wise interested, to meet on the land described in the application and the plat hereto annexed on the 24th day of March, in the year nineteen hundred and twenty-seven; and if at said time and place any of said jurors summoned do not attend, you shall immediately summon as many jurors as may be necessary with the jurors in attendance to furnish a panel of twenty jurors in attendance and from them the said The Baltimore and Ohio Railroad as one party and the said Eleanor Ray Maughlin as the other party, or their respective agents may each strike off four jurors; and the remaining twelve shall act as the jury of inquest of damages; and before they act as such you shall administer to each of them an oath or affirmation, as the case may be, that he 'will justly and impartially value the damages which the said owner will sustain by the use or occupation of the land, so as aforesaid required by the said company.' And you will see that the said jury reduce their inquisition to writing, and sign and seal the same and thereupon you shall return it to the Clerk of the Circuit Court for Montgomery County, and this shall be your warrant therefor.

"Witness my hand and seal this 12th day of March, A. D. 1927.

"John Jones.    (Seal)
"Justice of the Peace for Montgomery County, in the State of Maryland.

"Served by leaving copy of the within application, warrant and plat with the defendant, Eleanor Ray Maughlin, this 14th day of March, A .D. 1927.

"Jos. B. Pyles, Sheriff."

The defendant (appellant here) on the same day filed a general demurrer in these words:

"The defendant, The Baltimore and Ohio Railroad Company, a corporation, by Talbott and Prettyman, its solicitors, demurs to the whole of the plaintiff's bill of complaint, and particularly to the third and

fourth paragraphs thereof, and as grounds for such demurrer says:

"(a) That it discloses no substantial cause for relief.

"(b) That by section 2 of chapter 70 of the Acts of the General Assembly of Maryland of 1865, this defendant was authorized in the construction and repair of its Metropolitan Branch and in contracting for the right of way for the same and entering or using and excavating any land wanted for the use of the same, and in the condemnation of land or material or other property or of right of way, etc., and every other particular in which the same are applicable, may have and exercise, in regard to the railroad thereby authorized all and singular the powers given to the said Baltimore and Ohio Railroad Company in order to the construction or repair of its Railroad from the City of Baltimore to the Ohio River by the original charter or act incorporating the said company, or by any supplement thereto, so far as the said supplements may relate to the said road from the City of Baltimore to the Ohio River, and then said Baltimore and Ohio Railroad Company in the construction, repair and use of the said railroad by said act authorized shall be subject to the restrictions and limitations affecting the railroad from the City of Baltimore to the Ohio River so far as the same are applicable. That by the original charter or act incorporating the Baltimore and Ohio Railroad Company, same being chapter 123 of the Acts of the General Assembly of Maryland of 1826, this defendant was expressly authorized and empowered to condemn land for the use of its said road by the method herein sought to be enjoined.

"(c) That the act of the General Assembly of Maryland, chapter 123 of the Acts of 1826 constitutes a contract between the State of Maryland and this defendant not subject to repeal or alteration without the consent of this defendant whereby among other things the right was conferred upon this defendant to condemn land by the method here sought to be enjoined. That

such right is a valuable right which has not and cannot be without its consent contravened or modified, and that this defendant ought not be hindered or impeded by any person or persons in the exercise of such right.

"(d) That the condemnation of the plaintiff's property here sought to be enjoined is proposed to be exercised in strict accordance with the terms of the Act of the General Assembly of Maryland passed at its session of 1826, chapter 123, which act of assembly, so far as it affects the right of condemnation so conferred upon this defendant, has not been repealed, altered, or modified either by the Act of 1865, chapter 70, or by any other act of the Legislature of Maryland, nor have same been surrendered or abandoned by this defendant, and that this plaintiff has no right in law or equity to restrain or enjoin or otherwise prevent the exercise by this defendant of the rights so conferred.

"And for other reasons to be assigned at the hearing."

The cause was heard on the demurrer. Whereupon the chancellor, by his order of March 25th, 1927, overruled the demurrer, and from this order the defendant appealed.

As will be seen, the ground of the demurrer relied upon by the defendant is that the defendant company was incorporated by the act of the General Assembly of Maryland passed at its session of 1826, chapter 123; that under the provisions of said act the defendant was authorized to condemn land by the method sought to be enjoined in this case; that the said charter so granted constitutes a contract between the State of Maryland and the defendant, not subject to repeal or alteration without the consent of the defendant. From an examination of the Act of 1826 it will be found that the method prescribed for the condemnation of land by the defendant was the one in force at that time throughout this state, and applied to the state and all corporations or persons entitled to condemn private property for public use. That method is identical with the one sought to be used by the

defendant here. As outlined, it provided that the condemnation proceedings should be commenced by application of the party desiring to condemn, to a justice of the peace of the county where the land was located, praying that he should issue his warrant to the sheriff of that county directing him to summon twenty residents of the county, from which the condemnation jury was selected; this selection being made by the plaintiff and defendant each striking, from the list of twenty jurors so summoned, four names, and the remaining twelve constituted the jury of inquest. By chapter 117 of the Acts of 1912, as amended by chapter 463 of the Acts of 1914, now codified as article 33A of the Code, the former method of selecting a condemnation jury was changed. By the provisions of this article, proceedings for the acquisition of private property for public use are required to be begun by filing a petition in the circuit court for the county in which the property sought to be condemned is situated, on the law side thereof. Upon the filing of the petition the court is required to pass an order directing the summons to issue for the defendant, and upon the return of the summons, having all of the parties in interest before the court, the case is forthwith set at an early date to be fixed by the court, not less than ten nor more than twenty days from the date of said application. Section 6 of article 33A provides that: "If the date so fixed by said court shall occur during the regular sittings of any term of said court, at which a regular jury is in attendance upon said court, or can be procured to attend, the said case shall be heard before a jury selected from such regular panel, but if the date for said trial set by the court shall occur at a time when the regular jury drawn for that term has been discharged and cannot be reassembled under the law, then in such case the court shall forthwith select twenty good and lawful men from the names upon the regular jury list of the last jury term of the court to be summoned by the sheriff, to attend as jurors in said court at said time as fixed by the court for the trial of said case, and the summoning of said jurors and the empaneling of a jury of twelve men from said regular panel or from said list of jurors so summoned

by the sheriff, shall proceed as far as practicable in accordance with the rules and practice obtaining in said court for the selection and empaneling of jurors in other civil cases."

It will thus be seen that the method of selection of the condemnation jury is, under article 33A, different from that provided for in the charter of the Baltimore and Ohio Railroad, granted by the Act of 1826; the selection of the jury being committed now to the court, instead of to the sheriff, as provided for in the Act of 1826. It is undisputed that the charter of the Baltimore and Ohio Railroad, as contained in the Act of 1826, constituted a contract, and all obligations contained in that contract are protected by that clause of the Federal Constitution which prohibits a state from passing any law impairing the obligation of a contract (article 1, section 10). The question therefore is: Does the present method of condemnation, as prescribed in article 33A, impair the obligation of the contract between the State and the Baltimore and Ohio Railroad, as contained in its charter granted by the Act of 1826 ? We are of the opinion that it does not. The obligation of the contract was the right of the Baltimore and Ohio Railroad to condemn private property for its uses and purposes, while the method to be pursued in thus condemning private property, contained in the charter, was the remedy given to enforce the right of condemnation.

In 1 *Cyc.* 705, it is said: "The rule is well settled that no one has a vested right in any particular remedy, and that remedies can be modified and changed by the Legislature at its pleasure, subject, however, to the qualification, imposed by the organic law of the United States and most of the states of the country, that no law shall impair the obligation of contracts or encroach upon or violate other vested rights."

"The obligation may be impaired by a change in the remedy in force at the time when the contract was entered into. If the subsequent law subtracts from the effectiveness of the remedy and provides no substitute substantially equivalent to the former remedy, it is obnoxious to the contract clause. The obligee is not entitled to a remedy of the same form as

that in force when the obligation was contracted.   The form of the remedy does not enter into his right, which inheres merely in the effectiveness of his remedy, but he is entitled to some remedy, and that remedy must be substantially equivalent in coercive force to that provided by law when the obligation was contracted."   15 *Am. & Eng. Enc. of Law* (2nd Ed.), 1052.   "It is also generally conceded that the state, under its general power to change and alter remedies, may vary the times of holding courts, shift jurisprudence from one to another, create new courts and abolish old ones without in any wise impairing the obligation of contracts."   6 *R. C. L.* 364.

In the case of *Bronson v. Kinzie,* 1 How. (U. S.) 311, the Supreme Court, speaking through Chief Justice Taney, said: "Undoubtedly, a state may regulate at pleasure the modes of proceeding in its courts in relation to past contracts as well as future. * * * Regulations of this description have always been considered, in every civilized community, as properly belonging to the remedy, to be exercised or not by every sovereignty, according to its own views of policy and humanity.   It must reside in every state to enable it to secure its citizens from unjust and harassing litigation, and to protect them in those pursuits which are necessary to the existence and well-being of every community.   And, although a new remedy may be deemed less convenient than the old one, and may in some degree render the recovery of debts more tardy and difficult, yet it will not follow that the law is unconstitutional.   Whatever belongs merely to the remedy may be altered according to the will of the state, provided the alteration does not impair the obligation of the contract."   In *New Orleans City & Lake R. Co. v. Louisiana,* 157 U. S. 219, it is said: "Modes of procedure in the courts of a state are so far within its control that a particular remedy existing at the time of the making of a contract may be abrogated altogether without impairing the obligation of the contract if another and equally adequate remedy for the enforcement of that obligation remains or is substituted for the one taken away.   *Bronson v. Kinzie,* 1 How. 311, 315; *Von Hoffman*

*v. Quincy,* 4 Wall. 535, 552; *Conn. Life Ins. Co. v. Cushman,* 108 U. S. 51, 64; *McGahey v. Virginia,* 135 U. S. 662, 693." In the case of *Miners Bank v. Snyder,* 100 Md. 66, this Court said: "The power of a state to modify or change the method of procedure in its own courts for the enforcement of an existing contractual obligation so long as it does not thereby impair the substantial rights secured by the contracts has frequently been upheld by this Court. *State, use of Isaac, v. Jones,* 21 Md. 432; *Madigan v. Workingmen's Bldg. Assn.,* 73 Md. 317; *Wilson v. Simon,* 91 Md. 1."

From these authorities the law is settled that the Legislature of this state has the right to change the remedy for the enforcement of an existing contractural obligation, even to the extent of abolishing entirely the remedy in force at the time the contract was entered into, provided the method substituted therefor be substantially equivalent in coercive force to that provided by law when the obligation was contracted.

In addition to what we have said, there is another controlling reason why the demurrer of the appellant should have been overruled. The land sought here to be condemned lies in Montgomery County, along what is known as the Metropolitan Branch of the Baltimore and Ohio Railroad. This railroad was not constructed under the authority contained in the original charter of the Baltimore and Ohio Railroad, but under the authority contained in the special act of the Maryland Legislature, chapter 70 of the Acts of 1865. This fact has been judicially determined by our predecessors in the case of *State v. Balto. & O. R.,* 48 Md. 49. One of the questions to be determined in that case was whether or not the gross receipts of the Metropolitan Road were liable to tax. In deciding that question in the affirmative, the Court, speaking through Judge Robinson, said: "The gross receipts of the Metropolitan Road are also, we think, liable to this tax. The original charter, it is true, authorized the appellee to build lateral roads, and this power is not limited to the construction of roads leading to lime-kilns, factories and distilleries, as was urged in the argu-

ment by the Attorney General, but authorizes the appellee to build such roads for the transportation of freight and passengers. The Metropolitan Road was not built, however, under this provision in the original charter, but under the Act of 1865, ch. 70, which authorized the appellee to construct a road between Knoxville and the Monocacy Junction to the boundary of the District of Columbia; and for the purpose, as the act expressly declares, for providing a more direct communication from the West and North-West with the City of Washington. At this latter place it forms a junction with the Washington Branch, thus making a route distinct from, and independent of, the main line of the appellee. In no just sense can this road be considered as a lateral road within the meaning of the original charter."

By section 2 of chapter 70 of the Acts of 1865, provision is made for the condemnation of land by the same method as is authorized by the Act of 1826, the original charter. By section 4 of that act the Legislature expressly reserved the right to alter, amend or repeal the same, at its pleasure. By the Act of 1912, ch. 117, and the Act of 1914, ch. 463, now codified as section 15 of article 33A, it is provided: "The State, and any municipal or other corporation, commission, board, body or person, which under the laws of this State, has the right to acquire property by condemnation, shall acquire such property, if condemnation proceedings be resorted to in pursuance of, and under the provisions of this article, anything in any other Public General Law or Public Local Law or private or special statute to the contrary notwithstanding; provided, however, that nothing in this article contained shall apply to or change the present law or procedure for the opening, closing, widening or straightening of highways." By this provision the Legislature modified and amended the procedure to be employed in condemnation proceedings which was in effect at the time of the passage of chapter 70 of the Acts of 1865, under which the Metropolitan Branch of the Baltimore and Ohio Railroad was constructed, thereby exercising the expressly reserved right

contained in the last named act, to alter, amend or repeal the same at its pleasure.

We conclude, therefore: First, that the change of method of condemnation prescribed ·by article 33A of the Code, as to condemnation, is a change as to the method of enforcing the right, or pertaining to the remedy, only; that the substituted method of condemnation provides a remedy substantially equivalent in coercive force to that originally provided, and does not impair the obligation of the contract contained in the original charter of the Baltimore and Ohio Railroad.    Second, that the Metropolitan Branch of the Baltimore and Ohio Railroad having been built under the Act of 1865, in which said act there was expressly reserved by the Legislature the right to alter, amend or repeal, the Legislature had the undoubted right to amend the method of condemnation provided for in this act by substituting the method prescribed in article 33A of the Code.

*Order affirmed, with costs to the appellee.*