ETHEL E. NAGEL ET AL. *v.* JOHN J. GHINGHER,
BANK COMMISSIONER.

[No. 106, October Term, 1933.]

*Decided January 30th, 1934.*

The cause was argued before BOND, C. J., PATTISON, URNER, DIGGES, PARKE, and SLOAN, JJ.

*Robert E. Kanode* and *Eldridge Hood Young,* with whom were *J. Calvin Carney, L. Wethered Barroll,* and *J. Cookman Boyd, Jr.,* on the brief, for the appellants.

*Walter H. Buck* and *H. Webster Smith,* with whom was *J. Morfit Mullen* on the brief, for the Union Trust Company, appellee.

PARKE, J., delivered the opinion of the Court.

The original party complainant on the record at bar was Ethel E. Nagel, who began her suit against the bank commissioner of Maryland and the Union Trust Company of

Maryland, a banking institution incorporated under the laws of the State of Maryland, on behalf of herself and any other depositor of the trust company, who might join in the proceedings. Two other depositors united with the plaintiff, by the permission of the court, and the bill of complaint was subsequently amended. The bank commissioner demurred to this amended bill and the trust company answered, and the plaintiffs demurred to the answer of the trust company. Upon hearing on the demurrers the chancellor sustained the demurrer of the bank commissioner to the amended bill of complaint, as far as it raised the question of the constitutionally of section 71-I of chapter 46 of the Acts of the General Assembly of Maryland of 1933, and overruled the demurrer of the bank commissioner, as far as it questioned the propriety of making the bank commissioner a party defendant, with leave to answer in fifteen days; and the bill of complaint, as far as it sought to enjoin the defendants, or either of them, from doing the acts or seeking the relief prayed in the bill of complaint, other than ascertaining the value of the several complainants' interests in the trust company, was dismissed.

The allegations of the amended bill of complaint are that the three plaintiffs were severally depositors of the Union Trust Company of Maryland, upon the agreement that they could withdraw the amount of money so deposited on demand, but that they have been unable to withdraw the deposits since February 24, 1933, because on that day a bank holiday was proclaimed by the State of Maryland, and was thence continued and prolonged to March 4th, 1933, when, without any intermission, the custody, control and management of the trust company was, on March 5th, 1933, assumed by the bank commissioner of Maryland under the authority and pursuant to the provisions of chapter 46 of the Acts of 1933 of the General Assembly of Maryland. The bill further charges that on February 24th, and at all subsequent times, the assets of the trust company have not been sufficient to pay in full the depositors and other creditors of said trust company.

The further averments of the bill are that the trust company on May 29th, 1933, formulated a plan of reorganization of the trust company that purported to be under the terms and provisions of the said chapter 46, and particularly section 71-I, and that had the approval of the bank commissioner of Maryland. On the date of the adoption of the plan, the trust company sent to the plaintiffs and to the other creditors, depositors and stockholders a letter, and a circular entitled "Plan of Reorganization of Union Trust Company," with a form of assent thereto. The circular contained a condensed summary of the plan of reorganization, and was intended to be a compliance with the provisions of section 71-I of chapter 46 of the Acts of 1933. The plaintiffs thereupon demanded of the trust company and the bank commissioner certain detailed information which was alleged to be necessary for the plaintiffs intelligently to decide whether to assent or disagree to the proposed plan. The respondents refused to furnish the information, and thereupon the depositors dissented from the proposed plan, and evidenced that dissent by filing the present bill of complaint.

The plaintiffs not only dissented from the proposed plan of reorganization, but also asserted that chapter 46, and especially section 71-I of the act, under which the reorganization is to be made, are unconstitutional and void, and that, neither at the time of the enactment of the statute nor since, has there existed any emergency with respect to the banks and banking institutions of the state, and that, therefore, the proposed reorganization is invalid and void. The relief sought by this bill of complaint is either: (1) An injunction to restrain the defendants from carrying out the proposed plan of reorganization; (2) that chapter 46 of the Acts of 1933 be declared unconstitutional and void; (3) that the proposed plan of reorganization be declared illegal and void. Or (a) that the respondents may make discovery of the information which the respondents refused to give on demand of the plaintiffs; (b) that the fair liquidating value of the claims of the plaintiffs against the trust company be ascertained, and the trust

company be required to pay the amounts thereof to the plaintiffs in money; and (c) that general relief be accorded the plaintiffs.

The answer of the trust company admits the preliminary and formal allegations of the bill of complaint; denies the contention that chapter 46 of the Acts of 1933, or its section 71-I, is unconstitutional and void; asserts that the refusal of the demand of the plaintiffs for specified details of the affairs of the trust company is not material; but admits that the plaintiffs are entitled to receive the fair liquidation value of their claims as provided in section 71-I of the act because of their dissent, and that the defendant corporation is willing to pay to said plaintiffs said fair liquidating value of their claims upon the proper and legal ascertainment of such fair value.

The argument of plaintiffs is addressed to section 71-I of chapter 46 of the Acts of 1933, in support of the theory that this section of the act (Emergency Bank Act) is unconstitutional, on two grounds. The first, in the words of their brief, is that the section deprives depositors of existing legal remedies against banking institutions to enforce payment of deposits, without affording an alternative remedy substantially equivalent in coercive force to that provided by law when the obligation was contracted. The second, similarly quoted, is that the section provides no standards for a reorganization plan to be proposed by the directors, and no standards for the approval of any plan by the bank commissioner.

The section assailed is in these words:

"71-I. The Board of Directors of any banking institution whose aggregate property shall not be sufficient in amount to pay its debts or which may be unable to pay its debts in the ordinary course of business as they mature or which may be in the custody of the Banking Commissioner under this Act, may formulate and propose a plan of reorganization. Such reorganization may provide for a continuance of such existing institution or the formation of one or more new banking institutions, state or national, or other corporations and for

the transfer of all or part of the assets to such new institutions or corporations or to trustees for such consideration in money, securities or evidences of debt or interest of any kind approved by such Board.

"Such plan of reorganization shall be filed with the Bank Commissioner. He shall make such study and investigation of said plan as he may deem necessary and no hearing before him shall be required. If the Commissioner approves the plan he shall give notice thereof by publication once a week for at least two successive weeks in one or more newspapers having a general circulation in every county in which the institution, party to said reorganization, maintains an office or principal place of business. The word 'County' for this purpose includes the City of Baltimore.

"The banking institution so filing said plan shall within five days after such approval by the Bank Commissioner, cause notice to be mailed or sent to all stockholders, depositors and other creditors at their respective addresses shown on the books of the corporation notifying them that said plan has been filed and is open to inspection at the office of the Bank Commissioner, with a condensed summary of the important provisions of the plan. Any failure to notify any particular stockholder, depositor or other party in interest shall not affect the reorganization. A certificate of the President or other proper officer of such banking institution filing said plan to the effect that such notice has been given shall be *prima facie* proof that this provision has been complied with.

"Any depositor, creditor, stockholder or other person in interest who shall not have approved the plan may within thirty days from the first publication of the notice apply to the Circuit Court of the county in which the principal office of the institution is situated or to one of the Circuit Courts of Baltimore City if the principal office or place of business be located in Baltimore City and apply for the ascertainment of the fair liquidating value of his claim, stock or other interest, which liquidating value shall be made or paid either in money or in kind. Such Court shall upon such

application determine the present cash value of such objecting parties' interest on the basis of a judicial liquidation of said institution.

"The Court may in lieu of fixing the cash value of said objecting parties' interest apportion to said objecting parties their distributive share in the assets of the corporation. Assets divisible in kind shall in this event, be so apportioned. With respect to assets indivisible in kind between all the assenting and non-assenting parties the Court may apportion such assets by allotting to the objecting parties shares of stock, securities or certificates of interest issued by a corporation or Trustee reasonably fairly representing such non-assenting parties' interest in such indivisible assets. The entire amount alloted to such non-assenting parties, however, shall be delivered and paid to the Bank Commissioner as Receiver for liquidation for the benefit of the non-assenting parties.

"In case within said period of thirty days less than $33\frac{1}{3}\%$ in interest of the depositors and other unsecured creditors shall file such application in said Courts, the plan shall be binding upon all such depositors and other unsecured creditors, as fully as if they had assented to said plan. If within thirty days less than $33\frac{1}{3}\%$ of the stockholders of such institutions shall have made application to said Court as above provided, said plan shall be binding upon all stockholders as fully as if they had assented; subject, however, as to said depositors, other creditors and stockholders to the right to the valuation of their interest as above provided for. No party to said reorganization, however, shall be subjected by any such plan to any personal liability without his express consent. Said proceeding shall not, however, save at the option of the Board of Directors of said institution, postpone or delay consummation of such reorganization plan. If consummated prior to the conclusion of said proceeding, the reorganized or new company shall be liable and responsible for the performance of the decree in said proceedings. Such reorganized or new company may, however, at any time within ten days after the final decision in such proceeding

abandon said plan for reorganization and restore said property to said constituent institutions."

1. The bill of complaint alleges that on February 24th, 1933, and at all times since that date, the assets of the trust company were insufficient to pay its depositors and other creditors in full, and that the trust company was in the custody of the bank commissioner, so there can be no question that the formulation and proposal of a plan of reorganization that provided for the continuance of the banking business of the trust company was within the express authorization of the statute. All the requirements of the section with reference to the plan of reorganization are shown to have been fulfilled, and, therefore, there is nothing to prevent the plan becoming effective if the section and the plan adopted are constitutional.

As was stated in *Ghingher v. Pearson*, 165 Md. 273, 168 A. 105, the Emergency Banking Law, or chapter 46 of the Acts of 1933, is of universal application to all banking institutions and credit unions accepting deposits and doing business on March 4th, 1933, when the statute became effective as emergency legislation. During the complete possession, control, and management transferred by the act and conferred upon the bank commissioner, any banking institution whose aggregate property should not be sufficient in amount to pay its debts, or which might be unable to pay its debts in the ordinary course of business as they mature, or merely because it might be in the custody of the bank commissioner, could, with the consent of the commissioner, resume business under a plan of reorganization, which, whether a solvent or insolvent institution, afforded to all the parties in interest a new and statutory remedy under a comprehensive act which contemplated the alternatives of a continuance, a reorganization, or a liquidation of the financial institution. The act interposed its emergency provisions, and created a status for the specified period during which the contractual rights and liabilities of the parties were suspended, and methods whereby these rights and liabilities would be resolved and determined. If a financial institution were released, under the

act, from the custody, control, and management of the bank commissioner and resumed its normal financial operation, there would merely result a restoration of the rights and liabilities of all those in title and interest. A reorganization, on the other hand, might adversely affect one or all the different categories of rights, liabilities, and interests. The alternative of a reorganization on the plan adopted is liquidation; and, therefore, the parties in interest must severally make an election between the plan proposed for reorganization and a liquidation. The section provides the method of notice to all stockholders, depositors and other creditors, and makes the effectiveness of the plan depend upon the dissent, within thirty days, of more than one-third in interest of either (1) the depositors and other unsecured creditors, or (2) the stockholders. Should the dissent of these two classes be not numerous enough to prevent the adoption of the plan, the section does not exclude the dissenters from participation in the adopted plan, but puts every one of them to an election of whether he shall accept the adopted plan or receive the fair liquidating value of his claim, stock, or other interest. If the party elects to take the fair liquidating value, the section provides that this present cash value is to be ascertained by a court, upon the basis of a judicial liquidation of the banking institution, and, when so ascertained, shall be paid either in money or in kind. Instead of fixing such cash value, the court may apportion to the objecting parties their distributive share in the assets in kind. In the event there be assets indivisible in kind between all the assenting and non-assenting parties, an apportionment is secured by allotting to the objecting parties shares of stock, securities, or certificates of interest issued by a corporation or trustee, reasonably fairly representing such non-assenting interest in such indivisible assets, and the entire amount allotted to such non-assenting parties to be delivered to the bank commissioner as receiver for liquidation for the benefit of the non-assenting parties. In other words, the non-assenting party has assured to him an opportunity to exercise his judgment upon whether

the submitted plan of reorganization is more beneficial to himself than the receipt of the present cash value of his interest. So, ultimately, the latter alternative is to deprive the party of the remedy of an administration in equity of the affairs of a banking corporation in which he, along with all others, would receive his due proportion of the assets when liquidated, and to substitute therefor the judicially determined present cash value of his interest in the same assets. In other words, what he would get in the event of a universal liquidation would be his share in the residue for distribution; and what he would obtain under the statute would be a judicial finding of what the present cash value of that share would be. The effect substantially is that the dissenting party is deprived of one remedy and given another of equal efficacy, adequacy, and benefit, because it is not to be assumed that the finding by the court of the present cash value of what a dissenting party's interest would be on the basis of a final liquidation of the banking institution would not be the fair and reasonable equivalent of the value of what would have been received in the event of an actual and complete judicial liquidation. The value is found in the first method by judicial conversion, and in the new method by judicial estimation. Therefore, there was no material change by the alteration of the remedy, and, consequently, the alteration does not impair the obligation of contract, even though the new remedy be less convenient or less prompt and speedy. *Cooley on Const. Lim.* (8th Ed.), pp. 586, 587, 754; *Antoni v. Greenhow,* 107 U. S. 769, 2 S. Ct. 91, 27 L. Ed. 468; *Tennessee v. Sneed,* 96 U. S. 69, 24 L. Ed. 610; *South Carolina v. Gaillard,* 101 U. S. 433, 25 L. Ed. 937; *Penniman's Case,* 103 U. S. 714, 26 L. Ed. 602; *Fourth Nat. Bank v. Francklyn,* 120 U. S. 747, 7 S. Ct. 757, 30 L. Ed. 825; *Waggoner v. Flack,* 188 U. S. 595, 23 S. Ct. 345, 47 L. Ed. 609; *Panama R. Co. v. Johnson,* 264 U. S. 375, 392, 44 S. Ct. 391, 68 L. Ed. 748; *Balto. & O. R. Co. v. Maughlin,* 153 Md. 367, 376-378, 138 A. 334; *Cummings v. Wildman,* 116 Md. 307, 316, 317, 81 A. 610; *Pittsburg Forge Co. v.*

*Safe Deposit & Trust Co.,* 116 Md. 697, 84 A. 335; *Betten-dorf v. Field,* 114 Md. 487, 489-495, 79 A. 724; *Pittsburg Steel Co. v. Balto. Equitable Co.,* 113 Md. 77-80, 77 A. 255; *Miners' Bank v. Snyder,* 100 Md. 57, 66, 59 A. 707; *Thistle v. Frostburg Coal Co.* 10 Md. 129, 145; *Homer v. Crown Cork & Seal Co.,* 155 Md. 66, 78, 85, 86, 141 A. 425. Compare Code, article 23, secs. 33-36, 43 (as amended by Acts 1927, ch. 581, sec. 43), 88, 221; article 11, secs. 54, 60.

2. The second objection urged against the constitutionality of section 71-I is that the section provides no standards for a reorganization plan to be proposed by the directors, and none for the approval of any plan by the bank commissioner. It would have been impracticable for the statute to have erected explicit standards to govern the board of directors in the formulation of a plan of reorganization. The financial affairs of the numerous banking institutions present independent problems with respect to every one, since they differ in capital, assets, and liabilities, in the scope and nature of their financial operations, in their organization, management, and field of activity. It violates no principle of law to delegate to the governing body of a financial institution the preparation and proposal of a plan of reorganization, and then to require its presentation to the bank commissioner to study and investigate the plan, and to make his approval necessary before the plan may be submitted to everybody in interest for their acceptance or disapproval. The method prescribed assures that the plan will originate with the officers of the banking institution who are charged with the duty and have been administering its affairs, and are most familiar with its resources and its capacity to operate in the way planned; and, also, assures an official study and investigation of the plan by the bank commissioner, a state official designated to approve or disapprove the plan in the exercise of a sound discretion. Thus the problem of reorganization is first formulated by the board of directors and then submitted to every interest, with the power in one-third in interest of those affected to defeat the proposal. The method is simply an extension of the principle in corporate affairs

that the majority decides and rules. 2 *Machen on Corporations,* sec. 1296. The duties of the bank commissioner are defined by the act, and article 11 of the Code, which created the office. Nothing more definite than these requirements is demanded or advisable in order to secure the submission of an adequate, sound, and feasible plan for the adoption or rejection of the stockholders, depositors, and other creditors. No party in interest is bound to assent, but every one may dissent. Any dissenter may receive the value of his interest provided the number of dissents is not sufficient to prevent the adoption of the plan. The provisions of the section contemplate a reasonable exercise of the power conferred, and afford no sound basis for objection on constitutional grounds. *Weer v. Page,* 155 Md. 86, 141 A. 518; *Fischer v. St. Louis,* 194 U. S. 361, 24 S. Ct. 673, 48 L. Ed. 1018.

3.  The third contention is that the plan itself is inequitable and the incidence of its burden is unjustly imposed and distributed, and that unlawful preferences and priorities are created. The wisdom and justness of the plan is not for the court, but for the respective parties in interest to take into account in reaching their decision to accept or reject the submitted plan of reorganization. Nor is it perceived how the parties in interest may not agree among themselves that preferences and priorities may be given and recognized in the plan of reorganization, when those in interest who do not agree are not bound by such provisions, but, by their dissent, seasonably interposed, may thereby receive the present cash value of their interests on the basis of a judicial liquidation in which there would be neither preference nor priority except as necessarily allowed by virtue of statute or principle of equity. *Ghingher v. O'Connell,* 165 Md. 267, 167 A. 184.

It is not unlawful for those who, by choice, become parties to the plan of reorganization, to agree that all deposits of ten dollars or less shall have the privilege of payment in full. No other requirement for this preference is required than the agreement of all who become parties to the plan, since the dissenters receive, without any abatement on account of

this or other preference, the present cash value of their several interests. It may be inferred that the inclusion of such small deposits upon the same basis as the others might involve a net loss greater than that entailed by the preference accorded, because of the time and expense involved in the adjustment and accountancy necessary to the bringing and keeping these small accounts in conformity with the plan proposed.

The further objection that the contemplated reorganization releases the stockholders of their liability is met by the similar answer that those affected in interest may waive or release this liability if they believe it for their pecuniary advantage in a plan for the reorganization of a financially embarrassed banking institution; and that the dissenting minority will have, so far as the same may be found collectible, this statutory liability of the stockholders enter as one of the assets in the ascertainment of the present cash value of the objecting parties' interest on the basis of a judicial liquidation of the banking institution. Code, art. 23, sec. 147; *Homer v. Crown Cork & Seal Co.*, 155 Md. 66, 141 A. 425.

The request that the defendants furnish a mass of specified details with respect to the financial affairs of the trust company was made, as alleged, to enable the plaintiffs intelligently to elect whether or not they would assent to or dissent from the submitted plan. As the plaintiffs have dissented, they are left without their ground for the demand, which was, furthermore, not for an inspection of the books of the trust company, but a demand for information, which would have to be furnished by the labor and at the cost of the defendants.

The effect of the rulings by the chancellor was to retain the bill of complaint in so far as it was an application for the determination of the fair liquidating value of the interest of the plaintiffs, pursuant to section 71-I of the statute, the defendant trust company having declared in its answer that it was willing to discharge this value by a payment in cash.

Although the bill is framed with a double aspect, as it asks for one form of relief on the theory that section 71-I is unconstitutional, and another form of relief in the event that they fail in this contention, the retention of the bill by the chancellor for the ascertainment of the value of the interest of the plaintiffs as contemplated by section 71-I was, under the circumstances, in the exercise of a sound discretion. See *Phelps, Jurid. Equity,* sec. 56; *Story's Eq. Pl.,* sec. 42; *Seton on Decrees* (7th Ed.), vol. 1, 45, 3; 1 *Daniel, Ch. Pr.,* pp. 385, 608, 609; *Lingan v. Henderson,* 1 Bland, 236, 252; *Burch v. Scott,* 1 Bland, 112, 123; *Townshend v. Duncan,* 2 Bland, 45, 48.

In view of the importance of a decision in this case, and of the fact that no question was raised of the right to appeal on the present state of the record, the court has not considered that question.

*Decree affirmed, with costs.*