GEORGE E. WAESCHE, TRUSTEE, *v.* THURMONT BANK

[No. 10, April Term, 1938.]

*Decided April 22nd, 1938.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, and JOHNSON, JJ.

*Donald M. Waesche,* with whom was *Benjamin B. Rosenstock* on the brief, for the appellant.

*William Edgar Byrd,* for the appellee.

JOHNSON, J., delivered the opinion of the Court.

The correctness of the lower court's action in sustaining a demurrer filed by appellee to appellant's declara-

tion is the sole question presented by this appeal. The judgment appealed from was entered against appellant, plaintiff below, after he had declined to file an amended declaration.

Appellant, as trustee under an assignment made, in pursuance of an order passed by the Orphans' Court of Frederick County, by the executor of Leonard R. Waesche, late of that county, deceased, brought the suit to recover from appellee the balance of certain funds received by it from Leonard R. Waesche during his lifetime and placed to his credit under an agreement between him and the bank, which entitled the depositor to receive certain interest thereon semi-annually, and gave him the privilege of withdrawing any part of the funds after first giving thirty days' written notice.

The declaration contains five counts, the first of which is for money had and received by the defendant for the plaintiff's use, while it is alleged in the second count that the bank was indebted unto Leonard R. Waesche for money loaned by him during his lifetime, which claim the executor of his estate, pursuant to an order of the Orphans' Court of Frederick County, had assigned in writing to the plaintiff.

By the third count it is alleged that the defendant was indebted unto Leonard R. Waesche, since deceased, for money deposited by him with it during his lifetime in a certain interest account under a written contract, which account Waesche's executor, pursuant to the Orphans' Court order, had assigned to the plaintiff.

The fourth count is as follows:

"And for that Clinton F. Waesche, executor of the estate of Leonard R. Waesche, deceased, according to the books of the defendant, had on deposit with the defendant in interest account No. 2336 trust funds amounting to $34,253.98, which the defendant promised to pay to said executor in full under the sixth paragraph of the 'Revised Plan of Reorganization of The Thurmont Bank, Thurmont, Maryland,' dated November 13, 1934, and approved by the Bank Commissioner of the State of

Maryland on November 15, 1934. The balance of said trust funds remaining on deposit with the defendant in interest account No. 2336 on and after February 13, 1935, to-wit, the sum of $17,120.98, the said executor assigned and conveyed to the plaintiff, pursuant to an order of the Orphans' Court of Frederick County, Maryland, true copies of the petition and order of the Orphans' Court of Frederick County, assignment and of the aforesaid Revised Plan of Reorganization are attached hereto and prayed to be taken as a part hereof."

The allegations of the fifth count are in detail and begin with the date of the opening of the interest account by Leonard R. Waesche, under which it is stated that interest was payable to him thereunder, the dates when the same was credited to the account, and that on February 13th, 1934, Waesche departed this life testate, up to which time he was a member of defendant's board of directors; that on April 14th, 1934, his executor opened an account with defendant by depositing a certain sum of money, in which account he subsequently made numerous deposits and withdrawals down to the time of bringing the suit; that since the date last mentioned to this time defendant's books have shown that the account in question was "a trust deposit" payable to the executor upon thirty days' written notice; that as such executor on January 8th, 1935, he withdrew from said account $12,000, and on February 13th, 1935, he withdrew the further sum of $5,133.03; that there remains on deposit in the account as of February 13th, 1935, the sum of $17,120.98, from which no withdrawals have been made. Reference is also made to the order of the Orphans' Court in pursuance of which an assignment of the funds in the account was made to the plaintiff, and that on June 12th, 1936, the plaintiff served a written notice on defendant that within thirty days he intended to withdraw the balance remaining in the account, but the defendant has refused to pay the same.

With the declaration plaintiff filed as a part thereof four documents, designated as schedules A, B, C, and D.

Schedule A is the petition filed by the executor in the Orphans' Court of Frederick County for authority to assign the balance in the account to the plaintiff as trustee and an order of that court authorizing the same. Schedule B is the assignment to the plaintiff executed by the executor in pursuance of the Orphans' Court order, while schedule C contains the contract between the bank and the depositor under which it received the funds in question. Schedule D, dated November 13th, 1934, and two days later approved by the bank commissioner, is a revised plan of reorganization of the Thurmont Bank, Thurmont, Maryland, which is referred to in the fourth count of the plaintiff's declaration.

Appellee demanded the particulars of the plaintiff's claim under each count of the declaration, and the court, after a hearing, granted its petition to the extent of requiring the plaintiff to file particulars of his claim under the first, second, third, and fourth counts thereof. The plaintiff complied by stating the date upon which the account was opened; that Waesche had received a deposit book therefor, in which was printed the agreement pertaining to the receipt of the funds, and annexed thereto a photostatic copy of the book showing all moneys and deposits received by the plaintiff, alleged further the death of the depositor, the subsequent appointment of the executor, the opening by the latter in the defendant bank of an account in his representative capacity. Further that, after April 4th, 1934, the books of the defendant showed that the savings account originally created was an active trust deposit belonging to the executor of Leonard R. Waesche. It is further alleged that on January 1st, 1935, a certain amount was shown by the deposit book as being in the interest account, the withdrawal of $12,000 by the executor on January 8th, 1935, and the further withdrawal by him on February 13th, 1935, of $5,133.03, which withdrawals were permitted by the defendant under the revised plan of reorganization, but that the defendant wrongfully and illegally did not permit further withdrawals of the balance

of $17,120.98. The assignment by the executor to the plaintiff is likewise referred to, and the plaintiff alleged in the bill of particulars that he sued under the first count for the balance of the deposit remaining in the interest account; that he sued under the second count for the same balance on the theory that the money in question was money loaned the defendant; that under the third count he sued for the balance of the deposit on the theory it was rightfully deposited under a valid contract between his predecessor in title and the defendant, while under the fourth count he sued for the same balance on the theory that the defendant became legally bound to pay the money in conformity with the revised plan of reorganization of the Thurmont Bank, Thurmont, Maryland.

Briefly stated, the revised plan of reorganization, by its terms, formulated under the provisions of chapter 46 of the Acts of 1933, commonly known as the Emergency Banking Act, contemplates the writing down and charging off of certain assets of the old bank in accordance with appraisals, and the transfer of the same to a holding corporation, provision for the creation of which is therein made, with a capital stock of 3,500 shares to be issued to three trustees, and by them held for the benefit of holders of certain certificates of beneficial interest, upon payment of which the shares are issuable to the stockholders of record of the old bank for existing shares therein cancelled under the plan. Such certificates in the aggregate are not to exceed forty per cent. of the net amount of deposit accounts; ten per cent. of such accounts are applied to the purchase of stock in the reorganized bank and the remainder of fifty per cent. of such net deposits becomes immediately available upon adoption of the plan.

Summarizing, each depositor, unless his deposit was preferred by virtue of section 71E of the Banking Act, received for the net amount of his deposit forty per cent. of certificates of beneficial interest issued by the holding corporation, ten per cent. of the deposit for new stock

in the reorganized institution, and the remaining fifty per cent. in cash. Paragraph 6 of the plan defining preferred deposits further provided:

"All deposits in the net amount of twenty ($20.00) dollars or less, and of trustees and other fiduciaries having trust funds on deposit according to the books of the bank, and deposits of the State of Maryland, Frederick County or municipal corporations, lodges, churches, cemetery associations, schools and service organizations and Christmas Saving Club deposits will be exempted from the operation of this plan and upon effective date thereof will be withdrawable in full."

It is therein further declared that such certificates of beneficial interest shall constitute a *pro tanto* liquidation of that portion of each account represented thereby, and to this extent the bank is relieved from liability.

Upon this state of the pleadings appellant contends he is entitled to recover the balance on deposit in the interest account, because (a) the revised plan of reorganization was not applicable to such an account at the time he brought the suit, since, so far as the record discloses, appellee is a solvent institution and by the express terms of chapter 46, *supra*, it could not then have been in the custody, control and management of the bank commissioner of the state; (b) that the act was an emergency measure which only suspended the right of the depositor to the balance in the interest account for a period which has expired, thereby restoring his right to such balance. He further asserts (c) that appellee is liable on its contracts until it is dissolved or becomes insolvent, moreover, that he cannot be deprived of his right to the balance in the interest accounts, except by due process of law.

As against these contentions, it is maintained by the appellee: (a) That the depositor having failed to except to the revised plan of reorganization and request to receive an amount equal to the liquidating value of his deposit, as provided by the act, and having accepted the benefits of the plan, he is now estopped to recover in

this case; (b) that the interest account referred to is not a trust or fiduciary account entitling it to exemption from operation of the revised plan under the terms of paragraph 6 thereof; (c) that chapter 46, *supra*, is constitutional and does not violate the due process clause of either the State or Federal Constitutions; (d) that sufficient is shown by the pleadings to enable the court to see that the bank did not exempt itself from the operation of the statute, but actually reorganized under its provisions and was, therefore, insolvent or financially embarrassed to such an extent as to prevent it from reopening without reorganization; (e) that it is by the declaration and bill of particulars fully shown that the plan became effective and thereupon became a valid and binding contract between the bank and the depositor who failed to except thereto and, therefore, constituted for the purposes of this case liquidation and payment in full to him of the original indebtedness due by the bank, inasmuch as he has received in cash the amount due under the plan.

Concerning appellant's objections (a) and (b), it is only necessary to state that in the fourth count of the declaration he seeks to recover the balance of the interest account under the revised plan of reorganization hereinbefore referred to, and which is also made a part of the declaration. Furthermore, in his bill of particulars filed under counts 1 to 4, inclusive, he shows that the executor of Leonard R. Waesche accepted the benefits of the plan by withdrawing sums totalling $17,133.93, and this statement is likewise applicable to the allegations of the fifth count. It cannot, therefore, upon these facts, be successfully contended that appellee was a solvent institution, for had that been the case it would, of course, have passed out of the control of the State Bank Commissioner and escaped the losses incident to reorganization. Plaintiff's allegations are sufficient to show, not only that the bank was reorganized, but that the revised plan of reorganization was adopted, for otherwise the executor could not have withdrawn one-half the net

deposit of his decedent. It is true that the act was an emergency measure, but since it is shown that the bank was reorganized, we cannot agree that plaintiff is now entitled to withdraw any sum from the account in excess of the amount permitted by the plan, and, in view of the holding by this court in *Ghingher v. Pearson,* 165 Md. 273, 168 A. 105, the contention of appellant that under section 6 of the revised plan he is now entitled to recover the balance in the interest account is not sustainable. The provision of the revised plan referring to trust and fiduciary accounts must of necessity relate to accounts occupying that status as of March 4th, 1933, the date when the act became effective. The admissions that Waesche, the depositor, was then living and the account was not at that time either a fiduciary or trust account are sufficient to demonstrate that the provision above quoted, exempting fiduciary and trust accounts, can have no application to the account here under consideration. We, of course, are not to be understood as saying that the depositor, had he disapproved the revised plan of reorganization and not accepted its benefits, could not have made application to the Circuit Court for Frederick County under the terms of section 711 of the act and had the fair liquidating value of the balance remaining in the interest account determined and paid to him in money or in kind, but this course he did not, from the allegations before us, pursue.

In the case of *Shepherd v. Mt. Vernon Trust Co.,* 269 N. Y. 234, 199 N. E. 201, the court was dealing with an attempt on the part of plaintiffs, who had a joint account in a bank of that state which had undergone reorganization under chapter 772 of the Acts of 1933 of the same state, adding section 61-a to the Banking Law, to collect the difference between their deposit and that which they had withdrawn under the plan of reorganization. The plan was attacked, but there, as here, they had accepted its benefits by withdrawing the amount available thereunder. It was there said:

"It is true that the only benefit which the plaintiffs

have claimed and received was the immediate payment of a portion of an indebtedness which would, concededly, have been due to them even if no plan of reorganization had been adopted. Though the debt was then due, it would not have been collectible upon demand, from the bank, at that time, or even at the present time, if the plan had not been adopted and the bank had not been permitted to resume business under the plan. Thus the plaintiffs, before bringing this action, have availed themselves of some of the benefits of a plan of reorganization which they now ask the court to treat as invalid and, in this action, they base their cause of action upon a refusal of the bank to pay out moneys which, except for the plan of reorganization, the bank could not have paid out lawfully, and they seek a recovery payable out of the assets of a bank which obtained additional assets under the plan of reorganization, and for the purposes of such reorganization.

"It is well established that no cause of action based on a foundation so shifting can be sustained. * * *

"In spite of protests, the plaintiffs have received benefits and are now demanding other benefits which they could not have obtained if the plan of reorganization had not have been adopted. They cannot assert the invalidity of the proceedings and at the same time share in the benefit resulting from such proceedings. That conclusion is based upon well-recognized principles of fairness and justice, and in accord with an unbroken line of judicial authority. It is immaterial whether we classify these principles in the category of estoppel or waiver or of implied consent."

See, also, *Griffin v. Allendale Bank,* 160 S. C. 502, 158 S. E. 813; *Lansing Drop Forge v. American State Savings Bank,* 273 Mich. 124, 262 N. W. 756; *Hunt v. Roosen,* 87 Minn. 68, 91 N. W. 259; *Eustis v. Bolles,* 146 Mass. 413, 16 N. E. 286.

Concerning the third contention of appellant, it is not disputed that appellee is liable on its contracts until it is dissolved, becomes insolvent, or unable to pay its debts

as they mature in the ordinary course of business, but in view of the fact that its reorganization is shown to have been effected in pursuance of the act, the court must assume that its financial status had become seriously impaired and that, had this not been so, a reorganization would have been avoided. And in regard to plaintiff's contention that he cannot be deprived of his right to the balance in the interest account except by due process of law, it seems sufficient to refer to the decision of this Court in *Nagel v. Ghingher*, 166 Md. 231, 171 A. 65, 69, and authorities there cited, wherein it was held, in a carefully considered opinion, that the section of the act in regard to reorganization of banks, which upon its adoption were in fact insolvent or unable to pay their obligations as they matured, was unobjectionable upon constitutional grounds. It was further contended in that case that section 711 of the act was unconstitutional, because it provided no standards for a reorganization plan to be proposed by the directors and none for the approval of any plan by the bank commissioner. Concerning this objection, it was said:

"It would have been impracticable for the statute to have erected explicit standards to govern the board of directors in the formulation of a plan of reorganization. The financial affairs of the numerous banking institutions present independent problems with respect to every one, since they differ in capital, assets, and liabilities, in the scope and nature of their financial operations, in their organization, management, and field of activity. It violates no principle of law to delegate to the governing body of a financial institution the preparation and proposal of a plan of reorganization, and then to require its presentation to the bank commissioner to study and investigate the plan and to make his approval necessary before the plan may be submitted to everybody in interest for their acceptance or disapproval. The method prescribed assures that the plan will originate with the officers of the banking institution who are charged with the duty and have been administering its affairs and are

most familiar with its resources and its capacity to operate in the way planned; and, also, assures an official study and investigation of the plan by the bank commissioner, a state official designated to approve or disapprove the plan in the exercise of a sound discretion. Thus the problem of reorganization is first formulated by the board of directors and then submitted to every interest, with the power in one-third in interest of those affected to defeat the proposal. The method is simply an extension of the principle in corporate affairs that the majority decides and rules. 2 *Machen on Corporations,* sec. 1296. The duties of the bank commissioner are defined by the act and article 11 of the Code which created the office. Nothing more definite than these requirements is demanded or advisable in order to secure the submission of an adequate, sound, and feasible plan for the adoption or rejection of the stockholders, depositors, and other creditors. No party in interest is bound to assent, but every one may dissent. Any dissenter may receive the value of his interest provided the number of dissents is not sufficient to prevent the adoption of the plan. The provisions of the section contemplate a reasonable exercise of the power conferred, and afford no sound basis for objection on constitutional grounds. *Weer v. Page,* 155 Md. 86, 141 A. 518; *Fischer v. St. Louis,* 194 U. S. 361, 24 S. Ct. 673, 48 L. Ed. 1018."

And from an examination of the revised plan of reorganization of the bank, we are not convinced that the contention that it deprives the plaintiff of his property or money without due process of law is well founded, and especially must this become apparent when it is considered that neither Waesche in his lifetime nor his executor thereafter objected to the plan, and had the fair value of the amount of the bank's indebtedness determined and payable in money or in kind, but elected to be bound thereby by accepting its benefits.

The allegation in the fifth count that the executor, on April 4th, 1934, opened an account in appellee bank and from time to time thereafter made numerous deposits

therein, as well as withdrawals therefrom, can of course not affect the status of the account under consideration, inasmuch as, under the specific provisions of section 71E of the act, the funds in question constituted new deposits subject to withdrawal in accordance with the contract between the bank and the depositor.

From what has been said, we are of the opinion that appellant has alleged no facts which entitled him to recover, and the judgment appealed from must be affirmed.

*Judgment affirmed, with costs to appellee.*