HARRY E. NEWMAN, TRUSTEE IN BANKRUPTCY OF THE ESTATE OF KALMAN B. MOHEL, PLAINTIFF-APPEL-LANT, v. ASBURY PARK AND OCEAN GROVE BANK, DEFENDANT-RESPONDENT.

Argued October 25, 1937—Decided March 31, 1938.

For the plaintiff-appellant, *Bernard Freedman.*

For the defendant-respondent, *Lester C. Leonard.*

The opinion of the court was delivered by

BODINE, J. The plaintiff, the trustee in bankruptcy of the estate of Kalman B. Mohel, appeals from a judgment of no cause of action. The defendant bank was closed by the commissioner of banking and insurance of this state December 31st, 1931. At the time of closing, the plaintiff, as trustee, had on deposit the sum of $10,018.50. The defendant was a depository designated by the United States District Court for the District of New Jersey, and had given a bond for the safety of funds of the bankrupt estates, pursuant to the statute and the rules of that court. During the time that the bank was being liquidated by the commissioner, a dividend was paid on the plaintiff's deposit in the sum of $500.93. He also received the sum of $4,970.02, his *pro rata* share of the recovery upon the bond mentioned. After the reopening of the bank on May 1st, 1933, pursuant to a plan approved by

the commissioner of banking and insurance, the plaintiff caused to be drawn a check to his order in the sum of $4,547.55, the precise amount of money to which he would have been entitled had the bank not closed or had it been liquidated completely by the commissioner of banking and insurance, and that official had been able to pay the depositors in full. The check not being paid, this action was brought.

Under the reorganization plan consummated, pursuant to chapter 116, *Pamph. L.* 1933, *p.* 241, as amended, and approved by the requisite number of depositors and stockholders, a certificate for thirty thousand shares of preferred stock was issued to a trustee for all depositors and other creditors of the bank. Each had a proportionate interest in this stock until the original liability of the defendant to each was paid in full, together with cumulative dividends at the rate of one-tenth of one per cent. per annum.

Section 6 of *Pamph. L.* 1933, *p.* 241 (at *p.* 243), is as follows: "Subscriptions to such preferred stock shall be paid for either in cash or by an offset in the same amount against any deposit balance or balances on the books of such bank, trust company or savings bank or partly by cash and partly by such offset against deposit balance or balances."

The situation on reopening of the bank was that without the consent of the plaintiff his account was charged by an offset in order to provide payment for his interest in the preferred stock issued under legislative authority. He, therefore, claims that the statute and the plan of reorganization adopted thereunder, in so far as it attempts to bind him, is unconstitutional and ineffective and that as a creditor of an insolvent corporation he cannot be compelled to take anything in lieu of his debt except money, and that he had a right to have the corporate assets sold and to receive a proportionate share of the money so received and that he cannot, because of his inactivity, be compelled to accept securities or an interest therein in lieu thereof. This undoubtedly is the rule in this state in the case of the winding up of the affairs of an insolvent business corporation. *Lonsdale, &c.,* v. *International, &c.,* 101 *N. J. Eq.* 554; *Moore* v. *Splitdorf,* 114 *Id.* 358.

The defendant, however, is incorporated under the Banking act of 1899, page 431, as amended (*Pamph. L.* 1913, *p.* 291), which permits the commissioner to take possession of the property of any bank that is in an unsound or unsafe condition, and to retain such possession until such bank shall, with his approval, resume its business or until its affairs be finally liquidated. Under the act of incorporation, banks and their contracts are subject to the control of the state.

Section 29 of the act, as amended, permits any creditor or stockholder of an insolvent bank to apply to the Court of Chancery for an injunction and the appointment of a receiver, upon the conditions in the act stated.

The plaintiff on the date of closing was entitled to liquidation of his claim, either at the hands of the commissioner or the Court of Chancery, but the bank might also, under the statute permitting its incorporation, reopen on some basis approved by the commissioner.

"The federal constitution does not undertake to control the power of a state to determine by what process legal rights may be asserted or legal obligations be enforced, provided the method of procedure gives reasonable notice and affords fair opportunity to be heard before the issues are decided." *Honeyman* v. *Hanan,* (No. 583, October term, 1937, Supreme Court, United States). Nor has a person, in the constitutional sense, a property right to liquidation of his claim at the hands of a particular state official. *Gibbes* v. *Zimmerman,* 290 *U. S.* 326; 54 *Sup. Ct. Rep.* 140.

Under the reorganization plan adopted, pursuant to the statute, the assets of the business were devoted without impairment or diversion to the payment of the existing debts. The commissioner after due consideration, having approved the plan, the reopened bank takes the place of the closed bank with the commissioner in charge for the liquidation of existing assets. A portion of every depositor's deposit is frozen in the form of a proportionate interest in the preferred stock issued to the trustee and the assets of the bank, when collected, are used to retire this stock. It is obvious that the depositor could obtain no more if the tedious liquidation of

the bank continued at the hands of the commissioner. Under the plan no asset in the bank at the time of closing was diverted to any other source. The writing down of the deposits and the writing up of the capital by the issuance of the preferred stock to a trustee were bookkeeping transactions made possible under the statute and plan to enable the bank to properly function and carry on present important public duties.

A Mississippi statute providing for the reorganization of closed banks by a method somewhat similar to that followed in this case was upheld in *Doty* v. *Love*, 295 *U. S.* 64; 55 *Sup. Ct. Rep.* 558. The judicial powers conferred by our statute upon the commissioner does not distinguish this case from that. The propriety and fairness of the program can as well be determined by one official as by another. But there is no suggestion in the record that the reorganization plan adopted was not fair and equitable in every particular. There was due notice of every step to be taken and the plaintiff never made an objection until the plan was consummated. Then it was too late because a new situation was created in which new interests had arisen. *Basen* v. *Clinton Trust Co.,* 115 *N. J. L.* 546.

The assets of the closed bank remained in the reopened bank to be liquidated as opportunity offered. The freezing of deposits and the issuance of the preferred stock was an equitable method to accomplish the reopening, and at the same time secure the collection of the assets for the old depositors' accounts. All that occurred was that for the proportionate shares of the assets which the depositor would have been entitled to on liquidation he received a proportionate share of the preferred stock which was held in trust for him and others so situated. When sufficient assets are collected by a going bank, the preferred stock will be retired and the depositor will be paid as far as possible. A new and better method of liquidation was provided—liquidation at the hands of active bank officers as against the old and often cumbersome process of liquidation by the commissioner or a receiver.

If it were necessary to pass upon the constitutionality of

the act of 1933, under which the bank was reorganized, then that which this court recently said in *Bucsi* v. *Longworth Building and Loan Association,* 119 *N. J. L.* 120; 194 *Atl. Rep.* 857, in upholding legislation which affected the contract between building and loan associations and its members, because the relationship between the building and loan association and its members was congenitally affected with a public interest, would be pertinent. It was there held that the state might, in the proper exercise of its police power, limit withdrawals from building and loan associations in order to promote the common good. When banks are closed business is stagnated. The merchant can secure no accommodation. Borrowers from the banks are careless in meeting their obligations and collections lag. The legislature of this state, in providing a method for conserving the assets of closed banks for the benefit of creditors and at the same time that a liquidation for their benefit is taking place providing banking facilities in the affected centers, was for the benefit of the many and was a proper exercise of the police power. In this state, there are many state banks and had no such plan as that before us been devised the private business of the state would have remained in the depths of depression by reason of the lack of proper banking facilities. Banking is an essential part of the commercial life of the state and without the necessary means of doing business the citizen finds it difficult or impossible to support the state.

In *Shepherd* v. *Mount Vernon Trust Co.,* 269 *N. Y.* 234; 199 *N. E. Rep.* 201, a recent decision of the Court of Appeals of New York, a somewhat similar situation arose. The plaintiff there had a deposit account in the Mount Vernon Trust Company, closed by order of the superintendent of banks. Thereafter, the bank opened on a limited basis and issued preferred stock under a reorganization plan approved by the commissioner and the Supreme Court after numerous hearings. After the reorganization, plaintiffs sought to recover their deposit, notwithstanding the issuance of the preferred stock for part of the debt due. They challenged the right of the state to compel them, without their consent, to accept

from the reorganized bank the indebtedness due them in a form different from that to which they would have been entitled if the bank had not been reorganized. Judge Lehman, in delivering the opinion of the court, pointed out that the closing and liquidating of banks inevitably produce economic injury in many directions. He then held that the plan having been put into operation with the approval of the majority directly interested and with the approval of the court was binding upon all, and that although the plan did change the contractual rights and obligations of the parties, no single depositor had the right to unduly insist upon strict performance of his contractual obligations in a manner which would be unfair to others and opposed to the general welfare. He then went on to say: "The constitutional restriction is not intended to remove completely from the field of legislative power all rights derived from contract. To promote the general welfare, it may at times impose a reasonable restriction upon freedom to exercise a right derived from contract in form or manner which will bring injury to others. *Home Building and Loan Association* v. *Blaisdell,* 290 *U. S.* 398; 54 *S. Ct.* 231; 78 *L. Ed.* 413; 88 *A. L. R.* 1481. That is true, especially when the statute is not intended to relieve a debtor from his obligations, but is intended to permit creditors to take united action, consistent with the public interest, for the collection of their debts or the protection of their rights, in spite of the insistence of a minority upon a different course. *In re Title and Mortgage Guarantee Company of Buffalo,* 264 *N. Y.* 69; 190 *N. E. Rep.* 153; 96 *A. L. R.* 297. *Cf. Doty* v. *Love,* 295 *U. S.* 64; 55 *S. Ct.* 558; 79 *L. Ed.* 1303; 96 *A. L. R.* 1438. * * * The plaintiff cannot now successfully attack the plan of reorganization on constitutional grounds, even if we should assume that the statute or plan is vulnerable to such attack; for the plaintiffs have already availed themselves of some of the benefits of that plan. Until the superintendent gave the bank permission to resume business under that plan, without restrictions, the depositors' right to demand payment of the amount of their deposits was suspended, and their remedy

was dependent upon a reorganization of the bank, or its liquidation in accordance with the Banking law. If reorganization took place, then they could collect the debt due to them only in accordance with the terms of the plan of reorganization; if liquidation took place they could collect their indebtedness only out of the moneys available for that purpose. Through the plan of reorganization the bank was enabled to obtain new capital and was permitted to resume business, and the plaintiffs obtained an immediate right to payment of fifty-five per cent. of the indebtedness due them, in addition to other benefits, in substitution for a remedy which, at some time in the future, might result in the collection of a sum, which cannot now be determined, in satisfaction of their indebtedness."

In *Home Building and Loan* v. *Blaisdell,* 290 *U. S.* 398; 54 *S. Ct.* 231, Mr. Justice Hughes said: "The economic interests of the state may justify the exercise of its continuing and dominant protective power notwithstanding interference with contracts. In *Manigault* v. *Springs,* 199 *U. S.* 473; 26 *S. Ct.* 127; 50 *L. Ed.* 274, riparian owners in South Carolina had made a contract for a clear passage through a creek by the removal of existing obstructions. Later, the legislature of the state, by virtue of its broad authority to make public improvements, and in order to increase the taxable value of the lowlands which would be drained, authorized the construction of a dam across the creek. The court sustained the statute upon the ground that the private interests were subservient to the public right. The court said (*Id.,* page 480 of 199 *U. S.;* 26 *S. Ct.* 127, 130): 'It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the state from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power, which, in its various ramifications, is known as the police power, is an exercise of the sovereign right of the government to protect the lives, health, morals, comfort, and general wel-

fare of the people, and is paramount to any rights under contracts between individuals.' A statute of New Jersey (*Pamph. L.* 1905, *p.* 461; 4 *Comp. Stat.* 1910, *p.* 5794) prohibiting the transportation of water of the state into any other state was sustained against the objection that the statute impaired the obligation of contracts which had been made for furnishing such water to persons without the state. Said the court, by Mr. Justice Holmes (*Hudson County Water Co.* v. *McCarter,* 209 *U. S.* 357; 28 *S. Ct.* 529, 531; 52 *L. Ed.* 828; 14 *Ann. Cas.* 560) : 'One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the state by making a contract about them. The contract will carry with it the infirmity of the subject-matter.' The general authority of the legislature to regulate, and thus to modify, the rates charged by public service corporations, affords another illustration."

Mr. Justice Roberts, in writing the opinion of the Supreme Court in *State* v. *Brand,* 58 *Sup. Ct. Rep.* 450, said: "Our decisions recognize that every contract is made subject to the implied condition that its fulfillment may be frustrated by a proper exercise of the police power but we have repeatedly said that, in order to have this effect, the exercise of the power must be for an end which is in fact public and the means adopted must be reasonably adapted to that end." *Home Building and Loan Association* v. *Blaisdell,* 290 *U. S.* 398, 438; 54 *S. Ct.* 231, 240; 78 *L. Ed.* 413; 88 *A. L. R.* 1481; *Worthen Co.* v. *Thomas,* 292 *U. S.* 426, 431, 432; 54 *S. Ct.* 816, 817, 818; 78 *L. Ed.* 1344; 93 *A. L. R.* 173; *Worthen Co.* v. *Kavanaugh,* 295 *U. S.* 56, 60; 55 *S. Ct.* 555, 556; 79 *L. Ed.* 1298; 97 *A. L. R.* 965; *Treigle* v. *Acme Homestead Association,* 297 *U. S.* 189, 197; 56 *S. Ct.* 408, 411; 80 *L. Ed.* 575; 101 *A. L. R.* 1284.

In the present case the plaintiff, had the bank not reopened, would not have been entitled to the payment in full of his deposit, unless the course of liquidation yielded a sum sufficient for that purpose. By reason of the reopening of the bank, he can receive no greater advantage than those other creditors who consented to the plan. When liquidation, under

the plan adopted and approved, is completed he will receive that to which he would be entitled had there been no reorganization. In the meantime, he received certain present advantages and further by his inaction permitted a new situation to arise. It is now too late for him to complain when he availed himself of none of the remedies provided by law. The non-assenting depositor can have no greater rights than the assenting depositor where the plan of reorganization was in all respects fair and provided for payment of the plaintiff's claim as and when existing assets, if sufficient for that purpose, were collected.

Other points perhaps suggested or made in the argument or brief of counsel for the appellant have been considered, but do not possess sufficient merit to justify further discussion.

The judgment will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, BODINE, DONGES, HEHER, PERSKIE, DEAR, WOLFSKEIL, RAFFERTY, JJ. 10.

*For reversal*—CASE, WELLS, JJ. 2.