THERESA McSWEENEY, PLAINTIFF-APPELLANT, v. EQUITABLE TRUST COMPANY, A CORPORATION OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued February 4, 1941—Decided October 20, 1941.

For the plaintiff-appellant, *Bilder, Bilder & Kaufman* (*Samuel Kaufman, Sanford Freedman* and *William T. Connor,* of the Pennsylvania bar, of counsel).

For the defendant-respondent, *David T. Wilentz* (*Louis J. Cohen,* of counsel).

The opinion of the court was delivered by

DONGES, J. This is an appeal from a judgment of the Supreme Court, Atlantic County Circuit, entered in its favor, on motion of the defendant-respondent on the pleadings. Plaintiff moved to strike defendant's answer, which motion

was denied. 16 *N. J. Mis. R.* 193. Thereupon, defendant moved for judgment, which was granted. The essential facts are not in dispute.

The controversy arises out of the re-organization of the defendant-respondent bank pursuant to the provisions of chapter 116 of *Pamph. L.* 1933, as amended by chapter 287 of *Pamph. L.* 1933.

The complaint was in two counts, and is based upon the debtor and creditor relationship that existed between the parties from 1925 to 1933. *Maurello* v. *Broadway Bank and Trust Co.,* 114 *N. J. L.* 167. The first count sought recovery of a checking account, and the second count sought recovery of a savings or interest account. It alleges that on September 1st, 1933, respondent repudiated its contracts with appellant to repay the deposits in cash and tendered, in lieu thereof, "shares of preferred stock of Equitable Trust Company."

The answer admitted the deposits of plaintiff, and that no payment thereof had been made; and that stock had been offered in lieu of the deposits. A number of special defenses were pleaded, setting up in detail financial conditions prevailing throughout the United States in 1933; that the banking holiday was declared by the President and made effective in this state by proclamation of the Governor; that respondent was not permitted to reopen on an unrestricted basis because it could not qualify for Federal Deposit Insurance required of all members of the Federal Reserve System; that, on March 14th, 1933, respondent was permitted to open on a restricted basis under the provisions of the Altman Act (*Pamph. L.* 1933, *p.* 43); that appellant received, on or about March 22d, 1933, credit on new accounts of 5% of her deposits, amounting to $9,223.49 in her savings account and $1,009.59 in her checking account, and that appellant continued her deposits and withdrawals from March 14th, 1933, and until respondent opened for normal business on February 1st, 1934, and thereafter and until the commencement of this suit, maintained an active account of deposits and withdrawals. The answer sets up the adoption of chapter 116 of the laws of 1933, page 241, approved April 12th, 1933, authorizing the reorganization of banks with the approval of

the Commissioner of Banking and Insurance, and permitting banks to amend their charters or certificates of incorporation and to reorganize by the issuance of preferred stock to depositors and creditors, each depositor to subscribe to a certain percentage of his claim for the stock to be issued; and by the amendment of the act (chapter 287, *Pamph. L.* 1933, *p.* 770), the plan of reorganization was to become effective when the Commissioner of Banking and Insurance was satisfied "that the plan of reorganization is fair and equitable as to all depositors, other creditors and stockholders and is in the public interest and shall have approved the plan subject to such conditions, restrictions and limitations as he may prescribe, and (2) when, after such notice of such reorganization as the Commissioner of Banking and Insurance may require, (a) depositors and other creditors of such bank, trust company or savings bank representing at least seventy-five per centum (75%) of its total deposits and other liabilities as shown by the books thereof, and (b) stockholders owning at least two-thirds of its outstanding capital stock as shown by the books thereof, shall have consented in writing to the plan of reorganization;" the act further provides that if the plan was approved and should become effective it would be binding on all depositors, creditors and stockholders whether or not they shall have consented to such plan of reorganization.

The answer sets up that on June 17th, 1933, a plan of reorganization was submitted to depositors of respondent, which provided for the conversion of the entire restricted deposits into cumulative non-assessable preferred stock at the rate of one share of stock for each $30 on deposit; $10 thereof to be capital and the balance of $20 to be surplus or reserve for contingencies; that cumulative dividends on the preferred stock were to be paid at the rate of 3% per annum on the par value of $10; that this stock was to be redeemed at $30 per share plus accrued dividends, and no dividends or other earnings were to be paid to the holders of common stock until all the preferred stock was redeemed and dividends thereon paid in full; unrestricted deposits, that is, those made after March 14th, 1933, were not affected by the plan. The record shows that appellant received such notice, with

an outline of the plan, in which appeared the following: "Further information desired by any depositors will be cheerfully given by any member of our Board of Directors or officer of the bank."

The answer further averred that, in order to make the plan effective and to permit the respondent to operate on an unrestricted basis, insurance of new deposits by the Federal Deposit Insurance Corporation was required, that the subordination of the claims of several creditors in sums approximating those stated, namely, the Federal Reserve Bank of Philadelphia $783,923.48, of the Reconstruction Finance Corporation $929,907.28; of the Pennsylvania Company for the Insurance on Lives and Granting Annuities $111,241.21; of the Guaranty Trust Company of New York for an unstated but substantial amount, to the deposits made after reorganization and to new assets, was also a requirement of the plan.

The answer further averred that on August 23d, 1933, the Commissioner of Banking and Insurance approved the plan as fair and equitable as to all depositors, creditors and stockholders and in the public interest; that the respondent complied with the provisions of the statute with respect to the giving of notice of the plan; that the necessary consents of depositors, creditors and stockholders were obtained; that the capital structure of the bank was altered and new stock certificates issued; that on January 6th, 1934, all restricted deposits were converted into preferred stock and the depositors, including plaintiff, were notified to call at respondent's banking house and obtain their certificates for the new preferred stock; that no depositor, creditor or stockholder protested to the Commissioner of Banking and Insurance against the adoption of the said plan or suggested any amendment of its terms and conditions; that subordination agreements were obtained from the creditors above mentioned; insurance of deposits was obtained from Federal Deposit Insurance Corporation; that, on February 1st, 1934, defendant, reorganized in accordance with the plan, opened for business on an unrestricted basis and from that date has continued to operate so organized; that, throughout the proceeding, the books and accounts of respondent were open for inspection

by all depositors, creditors or stockholders; that depositors and other creditors and stockholders surrendered their respective rights and took in exchange therefor the rights and securities to which they were entitled under the plan.

It appears in the record that in September, 1933, appellant refused to accept a certificate for stock in exchange for the amount of her deposits.

It appears that between September, 1931, and March, 1933, deposits with respondent were reduced by withdrawals from $6,102,861 to $3,984,579, a shrinkage of $2,118,282; and respondent increased its loans to meet this situation from $303,244 to $2,246,194. Respondent admits and appellant concedes that on and after its closing on March 4th, 1933, pursuant to the proclamation of the President of the United States and the Governor of New Jersey, it was insolvent. That the value of its assets would not be sufficient on forced liquidation to pay its creditors seems to be conceded.

Respondent also pleaded that appellant was estopped to maintain this action because of her failure to take prompt action to prevent the plan going into operation and because of the change of position of respondent, its depositors and other creditors due to the failure of appellant to take any steps to enforce liquidation instead of reorganization; and that appellant manifested acquiescence in the plan of reorganization by availing herself of the banking facilities afforded by the reorganized bank.

Appellant moved before Judge Jayne to strike the answer and separate defenses as frivolous and asserted that chapters 116 and 287 of the laws of 1933 violated the contract, due process and equal protection of the laws provisions of the Constitutions of the United States and of New Jersey. Affidavits were presented on the argument of the motion, in accordance with the practice. The court permitted some minor amendments, not materially affecting the issue, to be made to the pleadings. Respondent moved for judgment on the amended pleadings. The court concluded that the affidavits failed "to project or exhibit any material factual issue for determination." With this finding we agree. The court also held that the proofs were such as to require application

of the doctrine of estoppel under authority of *Basen* v. *Clinton Trust·Co.,* 115 *N. J. L.* 546; 181 *Atl. Rep.* 67. Thereupon, an order was entered that judgment be entered for respondent.

With the conclusion of the learned Circuit Court Judge that the appellant is barred by estoppel we agree, and we deem it necessary to deal only with that question. Upon this question, we regard this case as being controlled by *Basen* v. *Clinton Trust Co., supra,* and *Newman* v. *Asbury Park and Ocean Grove Bank,* 120 *N. J. L.* 122; 198 *Atl. Rep.* 286. The facts in the present case are not in all respects similar to those in the cited cases, but they are such as to call for the application of the doctrine of estoppel.

Three years and two months elapsed between the date of approval by the Commissioner of the plan of reorganization and the institution of the pending action. During that time the plan to authorize the bank to resume business on an unrestricted basis was perfected and put into operation; mutual subordination agreements were executed by the secured creditors; the Federal Deposit Insurance Corporation issued to respondent a certificate of membership in the Temporary Federal Deposit Insurance Fund; the respondent was authorized to resume business on an unrestricted basis on February 1st, 1934; new deposits were made by persons who undoubtedly relied upon the validity and legality of the reorganization; other depositor creditors accepted stock under the plan and surrendered any right to payment on liquidation. The press of Atlantic City published notices and news items announcing the opening of the bank on a full and unrestricted basis, all of which was known to appellant, who availed herself of all of the banking facilities available to deposit customers of the bank.

The appellant was not obliged to sit by and submit to the situation. If it be conceded that she was barred from suing to recover her deposit during reorganization by the terms of the Altman Act, she could have asserted her claim to relief by several actions. The bank being admittedly insolvent, she had the right, under chapter 172,·*Pamph. L.* 1913, as amended by chapter 256, *Pamph. L.* 1931 (section 29), to demand that

the Commissioner of Banking and Insurance take possession of the appellant bank and exercise the powers and duties imposed upon him by statute. Upon his failure so to do, appellant could have applied to the Court of Chancery for a writ of injunction and the appointment of a receiver or trustee, which relief would in a proper case, be afforded.

If appellant was dissatisfied with the action of the Commissioner in approving the plan, or if she desired to object to the consummation of the proposed plan upon the ground of an invasion of her constitutional rights, she could have tested its validity by application for *certiorari*.

If appellant was, at the time of its submission and for a reasonable time thereafter, opposed to the plan and unwilling to be bound thereby, she had ample opportunity for recourse to the law and equity courts to protect the constitutional rights she now alleges were violated. She was fully aware that the situation was changing as time passed. She knew that payment of the claims of depositors similarly situated were being deferred and subordinated to new obligations assumed and to be assumed under the adopted plan; that, if substantial sums must be raised to pay off old deposits, the security of the holders of preferred stock taken in substitution for deposits, and of new deposits might be threatened. She knew that fairness and good conscience required, in the situation presented, that she act promptly and directly. Instead, she chose to remain idle and silent; she availed herself of the facilities of respondent bank and by her conduct gave apparent assent to what had been done. Now, when the financial situation of respondent has so improved that her chances of collecting a judgment are vastly better, instead of receiving only her *pro rata* share of the avails of its assets on liquidation, she seeks to secure the full amount of her deposits by asserting that her constitutional rights have been invaded and that the plan of reorganization is illegal and void. This she may not now do.

In 19 *Am. Jur.* 676, ¶ 62, "Estoppel" is defined:

"The rule is well recognized that where a party, with full knowledge, or with sufficient notice or means of knowledge of his rights and of all the material facts, remains inactive for

a considerable time or abstains from impeaching a contract or transaction, or freely does what amounts to a recognition thereof as existing, or acts in a manner inconsistent with its repudiation and so as to affect or interfere with the relation and situation of the parties, so that the other party is induced to suppose that it is recognized, this amounts to acquiescence and the transaction, although originally impeachable becomes unimpeachable." See 10 *R. C. L.* 694, and 21 *C. J. S.* 1206.

In *Basen* v. *Clinton Trust Co., supra,* this court said:

"By permitting the plan to be adopted and carried into effect without objection and accepting the benefits of the enlarged fund created by the reorganization, it constituted acquiescence in the plan and its future operation and the plaintiffs should not now be heard to contend to the contrary."

In *New Jersey Suburban Water Co.* v. *Harrison,* 122 *N. J. L.* 189, Mr. Justice Heher, speaking for this court said:

"In modern usage, equitable estoppel and estoppel *in pais* are convertible terms, embracing also *quasi*-estoppel. They embody the doctrine, grounded in equity and justice, that one shall not be permitted to repudiate an act done or position assumed where that course would work injustice to another who, having the right to do so, has relied thereon. An estoppel arises 'where a man is concluded and forbidden by law to speak against his own act or deed; yea even though it is to say the truth.' *Termes de la Ley, tit. 'Estoppel,'* cited in *Demarest* v. *Hopper,* 22 *N. J. L.* 599, 619. It is operative where a person 'has done some act which the policy of the law will not permit him to gainsay or deny.' 1 *Greenl. Evid.* (16*th ed.*) *ch. VI,* ¶ 22. See, also, *Blk. Com.* 308. While the creature of equity, and governed by equitable principles, it is a doctrine enforceable in courts of common law jurisdiction."

In *Rothschild* v. *Title Guarantee and Trust Co.,* 204 *N. Y.* 548; 97 *N. E. Rep.* 879, the New York Court of Appeals said:

"A principle of law is: Where a person wronged is silent under a duty to speak, or by an act or declaration recognizes the wrong as an existing and valid transaction, and in some degree, at least, gives it effect so as to benefit himself or so as

to affect the rights or relations created by it between the wrongdoer and a third person, he acquiesces in and assents to it and is equitably estopped from impeaching it."

The United States Supreme Court held in *Hayward* v. *Eliot National Bank,* 96 *U. S.* 611; 24 *L. Ed.* 855:

"The question of acquiescence or delay may often be controlled by the nature of the property which is the subject of litigation. 'A delay which might have been of no consequence in an ordinary case, may be amply sufficient to bar relief when the property is of a speculative character, or is subject to contingencies, or where the rights and liabilities of others have been in the mean time varied.' *Kerr, Mistake and Fraud, Bump's ed.* 302, 306; *Twin Lick Oil Co.* v. *Marbury,* 91 *U. S.* 587; 23 *L. Ed.* 328."

The property involved in this litigation comprised the assets of an insolvent banking institution, and the circumstances, as outlined above, were such as to call for prompt action by the plaintiff. The property was "subject to contingencies" and the "rights and liabilities" of others have been in the mean time varied." See, also, *Joseph* v. *Davenport (Iowa),* 89 *N. W. Rep.* 1081, and *Howard* v. *West Jersey and Seashore Railroad Co.,* 102 *N. J. Eq.* 517.

We conclude that, under the facts and circumstances of this case, the appellant was estopped to maintain this action.

We have carefully examined the other points raised by appellant, but do not deem it necessary to deal with them.

The judgment is affirmed, with costs.

*For affirmance*—The CHANCELLOR, PARKER, BODINE, DONGES, PORTER, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, THOMPSON, JJ. 11.

*For reversal*—The CHIEF JUSTICE, CASE, HEHER, COLIE, JJ. 4.